AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

MARIOTA TUIASOSOPO, UIAGALELEI IONA, UIAGALELEI LEALOFI, NAMU T. FA'ASEMOMO, and FALE L. FAI'AI for and on behalf of the FA'AILIOILO HEIRS, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 61-90

March 19, 1991

Before REES, Associate Justice, MATA'UTIA, Associate Judge, LOGOAI, Associate Judge.

Counsel: For Plaintiff, Arthur Ripley, Jr., Assistant Attorney General
For Defendant Mariota Tuiasosopo, Gata E. Gurr

For Defendants Uiagalelei Iona and Uiagalelei Lealofi, Levaula Kamu

For Defendants Fale L. Faiʻai and the Faʻailioilo Heirs, Charles V. Alaʻilima

The American Samoa Government brought this action in interpleader to determine entitlement to certain rental payments (presently amounting to about $105,000) held in a bank account pending resolution of a dispute over the ownership of the land on which the territorial garbage dump is located. The ownership of this land has been adjudicated in *Satele v. Uiagalelei*, 6 A.S.R.2d 143 (1987), *aff'd sub nom. Uiagalelei v. Faiʻai*, 9 A.S.R.2d 19 (1988), and in *Fauolo v. Satele*, 15 A.S.R.2d 141 (1990). *See also Uiagalelei v. Tuiasosopo*, LT No. 64-76, CA No. 3086-75 (Stipulated Judgment entered December 30, 1976; "Motion for Reconsideration and/or to Vacate Judgement" denied February 8, 1991).

Defendants Faiʻai and Namu move for partial summary judgment. Each of these two parties has submitted an affidavit from a surveyor, calculating the portion of the dump site that is within his or her property as described in the judgments in *Satele v. Uiagalelei* and *Fauolo v. Satele*. No other party has submitted an opposing affidavit, so technically the entire record before us consists of the evidence submitted by Faiʻai and Namu. This evidence being to the effect that the moving parties own respectively 44.823% and 2.13% of the disputed land and are therefore entitled to the same percentages of the accrued rents, and no other party having set forth by affidavit or otherwise specific evidentiary facts showing that there remain any genuine issues for trial, the moving parties are entitled to summary judgment. *See* T.C.R.C.P. Rule 56(e).

We have, moreover, carefully reviewed the calculations in the surveyor's affidavits and are satisfied that they do reflect the location of the land which was held in *Satele* and *Namu* to belong to the two moving parties. The surveyor's calculations reflect precisely the situation of the various parties' land as depicted in the maps designated Uiagalelei Exhibits D and G in *Satele v. Uiagalelei, supra*, the two exhibits on which we principally relied in drawing the Uiagalelei/Tuiasosopo/Faʻailioilo boundaries in the dump area. *See* 6 A.S.R.2d at 146.

We held in *Satele* that the Faʻailoilo heirs owned the land below the "old boundary" in Exhibit G (Drawing 1531-A), the map of the dump lease site, which according to that exhibit would amount to about 2.6 acres; that Uiagalelei owned everything north of the "new boundary,"

depicted as amounting to about 2.25 acres; and that Tuiasosopo and his siblings owned the acre, more or less, in between the two boundaries. The Fa'ailoilo surveyor's affidavit, submitted in connection with the present motion, claims exactly 2.606 acres.

Contrary to a suggestion made by counsel for Uiagalelei during argument on the present motions, it is also clear from an examination of Exhibits D and G and of our 1990 opinion in *Namu* that the tip of the southeastern panhandle of the dump lease site extends into land held to belong to Namu. Exhibit D, a "super-imposition drawing" also introduced as Uiagalelei Exhibit 13 in LT No. 39-87, clearly shows that the easternmost boundary of the Uiagalelei property known as Saumolia I is along the Utuloa/Futiga paved road, and that the southeastern corner of this property is about 100 feet south of the fork leading into the dump area. Exhibit G, the dump lease site map, clearly shows that the southeastern panhandle of the leased land extends about 300 feet south/southeast of this same fork. This land is within the "eastern pocket" claimed by Namu in LT No. 39-87, which we held to belong to him, with the exception of those portions within the registered survey of Saumolia I in the north and the Ulufale survey in the south. Because the parcel described in the Namu surveyor's affidavit, a strip of land about 200 feet long by 30 feet wide, is within neither Saumolia I nor the Ulufale survey, it is within the land adjudicated to be the property of Namu. (We note, moreover, that this strip is well to the south of the "new boundary" in Exhibit G, which was held in the 1987 *Satele* case to be the southernmost boundary of Uiagalelei's property in the dump area. The location of this panhandle, well to the southeast of the Uiagalelei/ Fa'ailoilo boundary, also appears clearly from a composite map of "Fasamea" and Drawing No. 1531-A, designated Plaintiff's Exhibit 1 in the 1975 trial of LT No. 64-76, and reintroduced as Exhibit 6 by Uiagalelei at the hearing on his recent motion to vacate the judgment in that case.)

Because the record before us in the present case, consisting solely of the affidavits and other documents submitted by Namu and Fai'ai, leaves no dispute about any fact material to their ownership of the two parcels in question --- and also because any factual or legal issue that might have been raised by any party has been resolved by our holdings in *Satele* and *Namu* and in the recent denial of Uiagalelei's motion to vacate the judgment in CA No. 3086-75 --- the moving parties are entitled to partial summary judgment as follows:

The Fa'ailoilo heirs own 2.606 acres within the dump lease site.

This is 44.823% of the 5.814 acres comprising the leased land. They are entitled to 44.823% of the accrued funds in the account (representing rentals since 1979) and to the same percentage of any further rentals that should accrue under the 1979 interim agreement pending the negotiation of superseding agreements between the Government and the various landowners.

The Namu family owns 0.124 acres within the dump lease site, representing 2.13% of the total area. They are entitled to 2.13% of the accrued rental proceeds and to the same percentage of future rentals pending the negotiation of a superseding agreement.

Insofar as the motions request additional funds to compensate the moving parties for rentals alleged to have been wrongfully paid to Tuiasosopo between 1974 and 1979, they are denied. The interpled amount obviously includes no such funds, and the complaint in interpleader has nothing to say about them. Although several parties' answers do raise these and related questions, the parties' respective rights and obligations with respect to pre-1979 rents depend on various unresolved questions of fact and law.

Counsel for the Government has called to our attention the fact that the bank holding the funds is not a party to the case. We are informed by counsel that the three signatories on the account are attorneys who signed as representatives of the parties to the 1979 agreement, who are also parties to the present case. This judgment is binding on the parties and their representatives.

The Bank of Hawaii is authorized to distribute 44.823% of the funds in the Futiga Landfill Dump account to Fale Fai'ai in her capacity as administratrix of the Estate of Fa'ailoilo Fau'olo, and 2.13% of the funds in this account to Namu T. Fa'asemomo. Should the Bank require a Court order specifically directing any party or his representative to execute a formal authorization for such distribution or to do any other act necessary to implement this judgment, counsel for the Government should draft and submit the appropriate order.

Judgment will enter in accordance with this opinion.

It is so ordered.